CHARLOTTE B. DILLAYE, Appellant, *v.* THE COMMERCIAL BANK OF WHITEHALL, impleaded, etc., Respondent.

Where a trustee is clothed with full power to manage and control the trust estate, an assignment by him of a mortgage impressed with the trust to a *bona fide* purchaser or pledgee cannot be impeached by the *cestui que trust.*

By an ante-nuptial contract between the plaintiff and her husband, S. D. D., she constituted him " trustee of all her real and personal estate," and as such " to have the entire and sole management, direction and control thereof," which appointment was " declared to be irrevocable." As such trustee, S. D. D., soon after the marriage, took possession of plaintiff's property and appropriated a portion of the avails to the payment of moneys previously borrowed by him to purchase certain real estate and to the erection of buildings thereon. He subsequently conveyed the real estate (plaintiff joining in the deed), receiving for a portion of the purchase-money the mortgage of the grantees, covering the premises

for a less amount than the sum thus appropriated. The grantees had no knowledge of such appropriation. S. D. D. assigned the mortgage by assignment, absolute upon its face, expressing full consideration. Through various mesne assignments the title to the mortgage became vested in the defendant. In an action brought to have the mortgage declared to be trust property for plaintiff's benefit,—*Held*, first, that conceding the mortgage was impressed with a trust in favor of plaintiff while held by S. D. D., a sale or pledge thereof by him was not a breach of trust, and an assignment to a *bona fide* holder could not be impeached by plaintiff; second, conceding that defendant's title could be impeached if it or the previous assignees had notice of the trust, the ante-nuptial contract conveyed no such notice, actual or constructive; and plaintiff having taken without any notice, express or implied, for a full and valuable consideration, was a *bona fide* purchaser, and acquired a perfect title thereto, free and discharged of the trust.

(Argued September 23, 1872; decided January term, 1873.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial district, reversing a judgment in favor of plaintiff, entered on the report of a referee, and granting a new trial on an appeal by The Commercial Bank of Whitehall, one of the defendants.

The action was brought by the plaintiff for the purpose, among other things, of having a certain mortgage given by Henry J. Sedgwick and George D. Cowles to Stephen D. Dillaye, her husband, on the sale and conveyance of the premises mortgaged by him to them, and which subsequently had become vested in The Commercial Bank, declared and adjudged to be trust property for her benefit.

The facts, so far as they are material to the issue between the parties to this appeal, are substantially as follows:

The plaintiff and the said Stephen D. Dillaye intermarried on the 31st day of August, 1848, having previously made and entered into an ante-nuptial agreement, by which she made, constituted and appointed him " trustee of all and singular the real and personal estate" of which she was seized and possessed, or was entitled to under the will of her father, William Malcolm, " and as such trustee to have the entire and sole management, direction and control thereof" (subject to certain limitations and conditions not important to be here

noticed), and such appointment was "declared to be irrevocable." This agreement was, subsequently, on the fifth day of May, 1849, recorded in the clerk's office of the county of Onondaga, where the real estate was situated.

Soon after the intermarriage, Mr. Dillaye took possession of the property of his wife and managed and controlled it as such trustee, and in the management thereof he appropriated funds belonging to her, to an amount exceeding the mortgage in question, to his own use, in the payment of moneys which he had previously borrowed and applied toward the purchase of the mortgaged property, which was owned by him in his own right and in the erection of a building thereon. He subsequently conveyed the premises to Sedgwick and Cowles, by a conveyance, in which the plaintiff joined, bearing date the first day of December, 1853, and containing full covenants, and the mortgage in question was given at the same time for the purpose of securing a portion of the purchase or consideration money thereof.

Sedgwick and Cowles were *bona fide* purchasers, without notice of the application of the plaintiff's funds in payment for the property or to the erection of the building; and regular assignments, absolute on their face, under seal and expressing full consideration for the mortgage in question from Dillaye to John Thompson, and from him through sundry mesne assignments to The Commercial Bank of Whitehall, were produced by the bank. The assignment to Thompson was made under and in pursuance of the following agreement between Dillaye and Thompson, to wit: "Said Thompson agrees to lend and advance to Dillaye the face of the mortgage, deducting five per cent per annum from its face for the time it had to run, and to receive from Dillaye an assignment of the bond and mortgage, and to transfer the same back to Dillaye at any time within three years, upon Dillaye's paying him back the face, less twelve per cent per annum, for the time it may have to run at the time he takes it." In pursuance of this agreement, Thompson advanced to Dillaye the face of the mortgage (there being then due thereon, including interest, the

sum of $7,600.62), less five per cent per annum for the time it had to run, amounting to $2,740.63, thus making the sum so advanced $4,859.99, and on taking the assignment he delivered to Dillaye a receipt or declaration stating that Dillaye was entitled to the privilege of taking said mortgage at any time within three years, on giving three months notice and paying the face, less twelve per cent per annum for the time it might have to run at the time he took it.

The assignment from Dillaye to Thompson did not indicate or show any agreement to return the mortgage to Dillaye, and it was not shown on the part of the plaintiff that any subsequent assignees from Thompson had any notice of any such agreement. None of the assignees of the said mortgage had any actual knowledge of the payment of the plaintiff's money for the property or of any interest or equity whatever of the plaintiff therein, and the bank, at the time of the assigment of the mortgage to it or soon after, advanced, on the faith thereof, the whole amount unpaid thereon and more.

There was no proof tending to show that the said mortgage was sold or transferred by Dillaye to Thompson with the acquiescence or knowledge of the plaintiff.

Upon these facts, the referee found, as conclusions of law:

First. That Sedgwick and Cowles obtained a valid title to the mortgaged premises by virtue of the conveyance from the plaintiff and her husband, divested of the equitable lien of the plaintiff, except through the said mortgage and for the payment of the moneys secured thereby.

Second. That the said mortgage, while held by Dillaye, was impressed with the trust created by the marriage articles; that the plaintiff had an equitable right thereto and an equitable lien upon the moneys secured thereby, and through the mortgage upon the land described therein, to the amount appropriated of the plaintiff's funds, as specially stated in his report.

Third. That when Dillaye transferred the said mortgage, the several purchasers thereof, immediate and remote from

Dillaye, took it charged with and subject to the same equitable right and lien of the plaintiff.

Fourth. That The Commercial Bank of Whitehall, the defendant, held the mortgage subject to and charged with such equitable right and lien.

He thereupon directed the bank to assign the mortgage, and the bond accompanying it, to a receiver, with instructions to collect the amount due thereon and as to the application of the proceeds.

The bank excepted specifically to the second, third and fourth conclusions of law above referred to.

A judgment was entered in conformity with the report of the referee.

*Amasa J. Parker* for the appellant. Plaintiff is entitled to follow the money paid for the Granger block into the mortgage received on the sale of the block. (2 Story Eq. Jur., §§ 1201, 1210, 1211, 1258; 2 Fonblanque Eq., book 2, chap. 5, § 1; Tiff. & Bull on Trusts, 32, 34; Hill on Trustees, 522, 765, note 2; *Taylor* v. *Plumer*, 3 Maul. & Sel., 562; *Small* v. *Atwood*, 1 Younge, 507; *Pierce* v. *Blackmore*, 6 Beavan, 507; *Oliver* v. *Pratt*, 3 How. U. S., 333; *Pugh* v. *Pugh*, 9 Ind., 132; *Steele* v. *Babcock*, 1 Hill, 527; *Phillips* v. *Cornmad*, 2 Wash. C. C. R., 44; *Day* v. *Roth*, 18 N. Y., 452.) The mortgage was assigned to Thompson to secure a usurious loan, and he was not a *bona fide* holder. (*Schroepple* v. *Corning*, 2 Seld., 107; *Henry* v. *Davis*, 7 J. Ch., 40; S. C., 2 Conn., 324; *Brown* v. *Dewey*, 1 Sandf. Ch., 56; S. C., 2 Barb., 28; *Strong* v. *Stewart*, 4 J. Ch., 167; *Dodwill* v. *Lenox*, 2 Edw. Ch., 272; *Despard* v. *Walbridge*, 15 N. Y.; 4 Kent Com., 142; Willard Eq. Jur., 431.) Plaintiff's right to follow it into his hand was not abridged by the assignment. (Blydenburgh on Usury, 125; *Wilkie* v. *Rosevelt*, 3 J. Ch., 206; *Pratt* v. *Adams*, 7 Paige, 642; *Schroepple* v. *Corning*, 2 Seld., 107; *De Witt* v. *Brisbane*, 16 N. Y., 513; 4 id., 449; 8 id., 176; 23 How., 360; 3 Sand. Ch., 285; 3 Comst., 19; 3 R. S., 5th ed., 72, 1, 2, 3,

15; 1 ed., 722; *Ramsdell* v. *Morgan*, 16 Wend., 754; *Keutzen* v. *Parks*, 2 Sand., 574; *Clark* v. *Shee*, Cowp., 197; *Felt* v. *Heye Bro.*, 23 How., 360; *Dean* v. *Howell*, Lalor's Sup., 39; *Green* v. *Given*, 33 N. Y., 258.) Defendant acquired no better title from Thompson than he acquired from Dillaye. (*Hawley* v. *Cramer*, 4 Cow., 716; *Van Rensselaer* v. *Stafford*, 1 Hop., 569; *Muir* v. *Schenck*, 3 Hill, 298; *Polison* v. *Martin*, 1 Sandf. Ch., 569; 3 Barb. Ch., 647; *M. E. Church* v. *Jacques*, 1 J. Ch., 450; *Murray* v. *Lilburn*, 2 J. R., 443; *Clute* v. *Robinson*, 2 id., 595; *Covill* v. *Traders' Bank*, 1 Paige, 131; *Chambers* v. *Graham*, 20 J. R., 144; *Evans* v. *Merxenai*, 11 Paige, 467; *Evans* v. *Ellis*, 4 Denio, 545; *Roberts* v. *Clute*, 24 How., 44; 30 id., 100; 3 Kern., 599; 10 Bosw., 273; *Peck* v. *Mallone*, 19 N. Y., 509; *Mickles* v. *Townsend*, 18 id., 575; *Bush* v. *Lathrop*, 22 id., 535; *Reeves* v. *Kimball*, 40 id., 311; *Ballard* v. *Burgett*, id., 314.) The rule of latent equities, as settled by this court, establishes plaintiff's rights to the relief demanded. (*Mickles* v. *Townsend*, 18 N. Y., 575; *Bush* v. *Lathrop*, 22 id., 535; *Covill* v. *Traders' Bank*, 1 Paige, 131; *Wilcox* v. *Howell*, 9 Bosw., 322; S. C., 44 Barb., 396; *Freeman* v. *Auld*, 37 id., 57; S. C., 44 id., 14; *Peabody* v. *Fenton*, 3 Barb. Ch., 451; *Ryal* v. *Ryal*, Amb., 413; 2 Serg. & Rawle, 521; *Murray* v. *Ballou*, 1 J. Ch., 566; Story Eq. Jur., §§ 399, 401; *Genene* v. *Genene*, 2 L. C. in Eq. [H. & W., 97], 103; *Green* v. *Green*, 33 N. Y., 362; *Roderiques* v. *Hefferman*, 5 J. Ch., 427; *Polison* v. *Martin*, 1 Sandf. Ch., 569.)

*D. Pratt* for the respondent. No trust in favor of plaintiff attached to the premises upon which the $7,500 mortgage is a lien. (*Rogers* v. *Murray*, 3 Paige, 390, 398; *White* v. *Carpenter*, 2 id., 217, 238; *Steere* v. *Steere*, 5 J. Ch., 1; *Bottsford* v. *Bar*, 2 id., 409; *Denton* v. *Davis*, 18 Ves., 499; Lewin on Trusts, 97; Law Lib., 599.) Defendant received the assignment of the mortgage in question free from any trust by implication or otherwise. (2 Story Eq. Jur., 1264; Tiffany on Trusts, 2, 199, 818; *Malin* v. *Malin*,

1 Wend., 625; *Fisher* v. *Fields*, 10 J. R., 195; *Murray* v. *Ballou*, 1 J. Ch., 566; *Shepherd* v. *McEvers*, 4 id., 136; 1 R. S., 730, § 64; *Pye* v. *George*, 1 P. Wms., 188; 1 R. S., 728, §§ 54, 762; *Jackson* v. *Van Denberg*, 8 Cow., 260; *Bush* v. *Lathrop*, 22 N. Y., 549.) Plaintiff's claim to recover is barred by lapse of time. (2 Story Eq. Jur., § 1520, and notes.) The trust attempted to be created by the ante-nup-trial contract is void as an express trust. (*Dillaye* v. *Greenough*, 45 N. Y., 446.)

LOTT, Ch. C.    Assuming that the plaintiff's husband was her trustee, and that the mortgage in question, while held by him, was impressed with a trust in her favor (as to which we do not deem it necessary to express any opinion, in the view we take of the case), there is, nevertheless, no ground for the reversal of the order appealed from.

This conclusion is reached by the following, among other considerations:

1st. The complaint alleges generally that Stephen Dillaye, the plaintiff's husband, immediately after their intermarriage on the 31st day August, 1848, entered into the possession, management and control of her real and personal property as her trustee; and that he continued to manage, control and possess her said property as such trustee until the commencement of her action; that he held the property impressed with a trust for her benefit, and was liable to account to her therefor. It then (after stating facts, showing that her funds or a portion thereof had been appropriated by her husband for his own individual use, and had been invested in certain real estate and securities) charges substantially that the same were held by the persons then having the legal title thereto, subject to her equitable lien, and charged with all the equities existing against her husband for the enforcement of her said lien. There is nothing in the complaint to show the nature of the trust; and although it alleges that Sedgwick and Cowles held the land owned by them, and on which the plaintiff sought to establish a lien, with notice of her equita-

ble rights, she does not claim that The Commercial Bank, or any of the other defendants, were chargeable with such notice. The report of the referee is equally indefinite as to the character of the trust. It merely finds that by an ante-nuptial agreement, entered into between the plaintiff and the said Dillaye, he "became trustee of certain real and personal property of the plaintiff, and, soon after their marriage, took possession thereof, and managed and controlled it as such trustee." He does not set forth the agreement nor state its terms, and there is nothing in his report to indicate its provisions. We are, therefore, authorized to assume that the trustee was empowered to manage and control the property as he should deem proper and beneficial for his wife, and even if, instead of taking the mortgage in question in his individual name, as he did, he had received and taken it in his name as trustee of his wife, and it had been therein expressly declared that he held it under such a trust, yet any *bona fide* purchaser would have acquired a perfect title thereto. If we have recourse to the ante-nuptial agreement itself, as it is set forth in the answer, the case is not varied. That, in express terms, makes, con-constitutes and appoints Mr. Dillaye trustee of the real and personal estate to which his wife was entitled under the will of her father; "and, as such trustee, to have the entire and sole management, direction and control thereof, subject to the limitations and conditions" thereinafter mentioned; and the said appointment is "declared to be irrevocable." Those limitations and conditions have reference to the disposition of the property after the death of the plaintiff, and are unnecessary to be noticed here. There is, clearly, nothing in this appointment or declaration of the husband's power and authority which would make a sale or pledge of the mortgage a violation of duty or breach of trust.

2d. If it be conceded that the plaintiff could have impeached the title of the bank to the mortgage, if it or any of the previous assignees thereof had taken it with notice of the trust, there is no allegation in the complaint or finding by the referee

of such notice; but, on the contrary, the referee finds, in express terms, that none of them had any actual knowledge of the application of the plaintiff's money or the property to the mortgage, or that she had any interest or equity whatever therein; and the record of the ante-nuptial agreement did not operate as constructive notice of the trust created thereby, so far as it related to the personal property affected by it; nor, indeed, would actual knowledge of its contents have conveyed any notice that the plaintiff had or could have any claim or right to the mortgage, or the money secured thereby.

3d. It follows, from what has been said, that the bank, without any notice of the plaintiff's equities, had a right to negotiate for the purchase of the mortgage; and nothing appears to invalidate the assignment thereof to it. It is found by the referee that the assignment to Thompson, and those to all the subsequent assignees, were regular and absolute on their face, and expressed a full consideration; and, in addition, that the bank, when the transfer to it was made, or soon after, actually advanced, on the faith of the mortgage, the whole amount unpaid thereon, and more; and it is not shown that it was chargeable with knowledge or information of any fact or circumstance by which the transfer could be impeached or questioned by the plaintiff on the case made by her complaint. It was, therefore, a *bona fide* purchase of the mortgage for a full and valuable consideration, without any notice, express or implied, of any trust therein in favor of the plaintiff, and, consequently, without knowledge or notice that the sale to it was made in contravention or in violation of such trust. Under such circumstances it acquired a perfect title thereto, free and discharged of all trust and equities with which it was charged in the hands of Dillaye. (See Story's Equity Jurisprudence, 10th ed., §§ 409, 410.) The above principle is not questioned, but is expressly admitted by DENIO, J., in *Bush* v. *Lathrop* (22 N. Y., 549).

4th. The plaintiff cannot derive any benefit from the finding of the referee that the assignment by Dillaye to Thompson was made under an agreement for a loan of money, and for

the transfer of the mortgage back to Dillaye by him on being paid the face thereof, less twelve per cent per annum for the time it had to run when such re-transfer was made. She has not based her claim for relief on that agreement; nor does it appear to have been tried or decided on that theory.

Having reached the conclusion that the plaintiff is, for the reasons above expressed, not entitled to a reversal of the order appealed from, I deem it unnecessary to consider the effect or the applicability to this case of the principle decided by the Court of Appeals in *Dillaye* v. *Greenough* (45 N. Y. 438), where the construction of the same ante-nuptial contract came under consideration.

It results, from what has already been said, that the order appealed from must be affirmed, and that judgment absolute must be rendered against the plaintiff, with costs pursuant to her stipulation to that effect.

All concur.

Order affirmed and judgment accordingly.