John D. Bennett, S.
This proceeding was brought by the mother of an infant for an order directing the trustees of this estate to make payment directly to her of moneys to become shortly due and payable to her former husband, the father of the child. The matter has been submitted for decision on the question of jurisdiction based upon the petition, answer, affidavit and two memoranda of law.
While the caption of the proceeding refers to a direction “ to make payment of income payable to ” the ex-husband and father, the petition does not in any way distinguish between income and principal of the trust but asserts, and it is not denied, that the trust will terminate this month and payment of the corpus thereof will be payable to the respondent under the terms of his father’s will. Whether any accrued income is or will be on hand does not appear.
There is a serious question of jurisdiction involved, it being decided in Matter of Littauer (285 App. Div. 95) that a direct proceeding against the trustee does not lie (see, also, Matter of Goelet, 28 A D 2d 149). The petitioner cites Matter of Chusid (60 Misc 2d 462) in which Surrogate Sober held otherwise. Since the matter is submitted on the papers without a hearing and solely on the question of jurisdiction, the court will assume that every allegation made by the petitioner is true as contained in the petition, amended by her affidavit, as well as the matters of record in the Supreme Court of Nassau County as disclosed by the petition and answer.
*571 After carefully reviewing the law and the allegations made, the court is of the opinion that it does not have jurisdiction and, accordingly, the petition is hereby dismissed.
There are a number of differences between this case and the Chusid case (60 Misc 2d 462, supra):
(1) In Chusid the court was dealing with a “ discretionary trust ” (Chusid, p. 463), whereas the trust in this case is clearly a “ spendthrift ” trust. This is clear from article “Tenth” of the will: “No person receiving any benefit of any kind, whether in the form of income, principal payments or of any other kind, whether mentioned or not, shall have any right to assign, encumber, or anticipate by alienation or commutation any such benefit receivable hereunder, or his or her right or interest in any benefit receivable hereunder of any kind, and, except as otherwise provided by law, no such benefit receivable hereunder shall be subject to claims of creditors for such beneficiary, whether by attachment, execution, garnishee or any other legal process, whether mentioned or not, nor shall any such benefit be any part of the assets of any bankruptcy estate or assignment estate, whether voluntary or involuntary.”
(2) In Chusid (60 Misc 2d 462, supra) there was no divorce decree and the adult parties involved were husband and wife, although living apart. Sol Chusid had no assets and was unable to earn any living; the wife from time to time had been awarded small sums for support, but the wife and children had received no support whatsoever for two years and very little during the previous seven years (p. 463). In our case the petitioner wife is divorced from the father who is the beneficiary of the trust under his father’s will. In addition, by the decree of divorce made in 1961 the Supreme Court of Nassau County noted that the parties had settled their property rights and retained jurisdiction over the parties and their two children, only one of whom is mentioned in the papers here. The decree dissolved the marriage because of this petitioner’s fault and provided, inter alia, that plaintiff (petitioner herein) shall have the right to apply for appropriate relief at the foot of the said decree “in the event any change is made in the present situation of * * * Marcy Lou Mester ” (not mentioned in this proceeding), and ‘ ‘ in the event any extraordinary medical or dental expenses are required ” for Owen Mester (the infant who is mentioned in this proceeding). Moreover, the petitioner wife had applied at least twice to the Supreme Court subsequent to the 1961 decree, and the order dated March 9, 1970 by that court recited two application requests for modification of a previous order dated *572 in 1969. One of those requests dealt with reimbursement for psychological treatment for the child herein, Owen, and for a money judgment for arrears in child support payments, as well as orthodontal work. The petitioner now asks this court for the same or similar relief.
(3) In Chusid (60 Misc 2d 462, supra) the children involved were named income beneficiaries of the trust and entitled to share the income with their father, whereas neither the petitioner nor the child here is a beneficiary of the Mester trust, except that this child and his sister (mentioned above) would be considered as remotely contingent remaindermen, depending on the death of the father, respondent, who is alive and will be entitled to complete distribution on the termination of the trust in this month of April, 1972.
(4) In Chusid (60 Misc 2d 462, supra) the children involved were children dependent (pp. 465, 466, 467) for support on their father and the court there said: “ It is concluded that the children of Sol Chusid, solely by virtue of their status as dependent children, have standing in this proceeding under the statutes discussed [SCPA 209, subds. 3, 4, 9.] ” (Chusid, supra, at p. 469; emphasis supplied). Such is not the case here since Owen is alleged to be living with his mother and stepfather and the court records show that he has assets of his own of at least $11,145.39 (see the last certification supplied to this court on March 8, 1971 in the guardianship file).
(5) In Chusid (60 Misc 2d 462, supra) there was an accounting proceeding pending to which all of the persons involved there were already parties. This circumstance was emphasized by Surrogate Sobel (pp. 469, 470) as an expansion of this court’s jurisdiction “ so that litigants would not be compelled to resort to two forums for the determination of their claims ” (citing cases at p. 469 and SCPA 201, subd. 3 at p. 470). It would appear that the converse must be true in this case since the petitioner had been resorting to the Supreme Court to determine her claims. For this court to assume jurisdiction over the matters adjudicated by the Supreme Court would really be adding another forum, and usurping the powers of the Supreme Court in a ease still pending before that court.
(6) In Chusid (60 Misc 2d 462, supra) the Surrogate’s Court was, of course, at liberty to remove to it any matter or proceeding pending in the Family Court (SCPA 501). Accordingly, the decision there was stated to be “ in full satisfaction of * * * the orders of the Family Court ” (p. 470). This court *573 has no power to try the issues presented here over which the Supreme Court has exercised its jurisdiction (SCPA 501).
(7) The Chusid case (60 Misc 2d 462, supra) aptly points out (p. 469) that the Littauer case (285 App. Div. 95, supra) “ holds that a wife or children of the beneficiary seeking to enforce by a direct proceeding a claim to alimony or support must first establish such a claim in another forum to have standing in the Surrogate’s Court.” The petitioner here is not a wife and she admits in her petition that the father has a family consisting of a wife and two other children, presumably being supported by him in the State of Florida. She, on the other hand, resides in the State of New Jersey with her present husband, two issue of that marriage, and the child, Owen. The other child of the petitioner and the respondent has been in an institution. The family and property rights of other children and persons not before this court would be directly affected by this application, and, in addition to the other reasons above discussed, it would be presumptuous of this court to assume jurisdiction over alimony and support matters which have been considered by and are the sole province of the Supreme Court to adjudicate.
There is another prayer for relief which stands on a different basis, jurisdictionally speaking. This is the request that the respondent trustees or the child’s father be directed to deliver to the petitioner the sum of $1,500, with interest, because the respondent father in 1957 collected a legacy due to the infant under the will. This was four years before the divorce decree and a receipt was filed in the executor’s accounting proceeding signed and acknowledged by the father on September 11, 1957. While the final decree on the executorial accounting was not settled and signed until January 20, 1970, it appears from the records of this court that this petitioner mother was a party to those proceedings as parent and guardian on behalf of the infant, Owen, then 12 years of age. She and the infant were duly served with citation in the State of New Jersey and she filed no appearance or objection. The infant was represented in those proceedings by a guardian ad litem who made mention in his report that the $1,500 legacy had been “ paid ”, and he filed no objection thereto. This payment was made to the father some 15 years ago, four years before the divorce and at a time when he was presumably living with and supporting the infant and this petitioner. No application is or has been made to open that accounting decree as against either the executors, the trustees, the father or his four children who would be contingent remaindermen under the trust. The court also notes that in *574 their petition for appointment as general guardians in 1963 this petitioner and the respondent father did not list the legacy as being unpaid and at that time must have considered it as having been used for the infant.
Settle order on five days’ notice, with three additional days if service is made by mail, dismissing the petition in accordance with this decision.